RODERICK LUMBARD & another *vs.* LAUREN TRASK.

By *St.* 1809, *c.* 86, trustees of the school funds in the town of Springfield were incorporated, with authority to sell and convey such lands as the town had directed, or should thereafter direct, to be sold for the use of schools : The town, in 1810, passed a vote, that said trustees be authorized to sell such parts of the land belonging to the town as the selectmen should, by writing, certify that it would be for the interest of the town to sell. *Held,* that future boards of selectmen, as well as the selectmen chosen for the year 1810, were intended by this vote.

WRIT OF ENTRY to recover a small tract of land in Springfield, "being part of the old road, as laid out and accepted by the court of general sessions of the peace, holden at Springfield, in August 1760, leading from Springfield to Longmeadow, on the south side of Mill River," &c.

At the trial before the chief justice, the demandants gave in evidence a deed of the demanded premises, made to them, on the 9th of April 1844, by the trustees of the school funds in the town of Springfield. They then proceeded to offer the following evidence to prove, either title in themselves, or an authority in said trustees to convey the title of said town : 1. The act incorporating said trustees, passed on the 3d of March, 1810. (*St.* 1809, *c.* 86.) 2. A vote of the town of Springfield, passed on the 21st of November 1809, accepting the report of a committee recommending an application to the legislature for an act to incorporate trustees of school funds. 3. A vote of the town, passed on the 8th of May 1810, " that the trustees of the school funds in said town " (who had been recently incorporated) " be authorized and empowered to sell such parts of the land belonging to said town as the selectmen shall and may, by writing under the hand of the major part of them, certify that it will be for the interest of said town to sell and dispose of." 4. Records of the trustees of the school funds, showing an organization under their act of incorporation, their election of officers, and the following votes of said trustees : " September 30th 1843. Voted, that the committee on lands be authorized to sell a strip of land on the west side of the old road leading across Mill River, near L. Trask's shop, to Roderick Lumbard, and to sell the residue

47 *

of the land owned by the town, at their discretion, at auction." "May 25th 1844. Voted, that the president be authorized and empowered to execute and deliver confirmatory deeds to those persons to whom deeds of land have heretofore been made by the trustees, or the president of the trustees, if the purchasers request it, and that all sales heretofore made by the trustees be hereby confirmed. Voted, that the certificate of the selectmen of the town of Springfield, bearing date April 29th 1844, authorizing and confirming the sale of lands, be entered upon record. Voted, that the president be authorized to execute a deed of conveyance, and give seizin upon the premises, to James Brewer and Roderick Lumbard," (the present demandants,) "or either of them, of a tract of land on the southerly side of Mill River, and westerly of Trask's furnace, or any lands which the trustees shall convey, lying in the vicinity thereof, to any person or persons."

To show that the trustees were duly authorized by certificate of selectmen, made pursuant to the aforesaid vote of the town, passed May 8th 1810, the demandants offered the abovementioned certificate of selectmen, as follows : "We the subscribers, selectmen of the town of Springfield, hereby certify that it is expedient for the interests of the town, that the trustees of the school funds in the town of Springfield shall sell all such lands, belonging to the town, as have been used for roads and public highways, and which heretofore have been discontinued; that said trustees may hereafter, from time to time, sell all such lands, where the roads and public highways over them shall have been discontinued ; and that the selectmen approve and ratify all such sales as have heretofore been made, by said trustees, of lands over which roads have been laid, which were discontinued at the time of such sales. Springfield, April 29th 1844." (Signed by the selectmen.)

It was objected by the tenant, that by the vote of the town, of May 8th 1810, authorizing the trustees to sell such lands as the selectmen should certify that it would be for the interest of the town to sell, the power of certifying was lim-

ited to the selectmen then in office, and that the vote did not authorize future boards of selectmen, for an unlimited time · and it was contended, that as the authority had not been renewed, the certificate of the selectmen of 1844 was not within the authority conferred by the town, and vested no authority in the trustees to sell. This objection was sustained by the judge.

A nonsuit was thereupon entered, to be taken off, and a new trial to be granted, if the decision of the judge was wrong.

*W. G. Bates & H. Morris,* for the demandants. The *St.* of 1809, *c.* 86, § 2, enacts "that such of the lands belonging to the town of Springfield as the said town has already directed, or may hereafter direct, to be sold for the use of schools in said town, or shall authorize the said trustees to hold or dispose of, and also the proceeds of any sale of lands appropriated by said town for the use of schools, be, and they hereby are vested in said trustees, and their successors, and the said trustees are hereby authorized and empowered to sell and convey the whole or any part of such lands, and to execute deeds thereof," &c. By this *St.* a permanent body was incorporated ; and the town's vote of May 8th 1810 must have been passed with reference to the character of that body, and for the purpose of establishing a permanent mode of directing what lands should thereafter be sold. The selectmen then in office were not named ; and therefore an official and not a personal authority was conferred, which extended to future boards of selectmen. The power of certifying to the trustees should continue as long as the power of the trustees to sell. See 4 Kent Com. (3d ed.) 320. *Jackson* v. *Ferris,* 15 Johns. 348. *Farwell* v. *Jacobs,* 4 Mass. 634.

*R. A. Chapman & Ashmun,* for the tenant. This case depends wholly on general principles applied to powers conferred, and no adjudications directly bear upon it. The main thing to be regarded is the *St.* of 1809, *c.* 86 ; for the trustees thereby incorporated can proceed only in the manner therein authorized. The lands did not vest in the trustees ; and therefore they could not convey them as their own. By § 2

of said statute, the deeds which they were authorized to execute are declared to "be good and effectual in law to pass and convey *all the right of said town* in and to said land."

The town's vote of May 8th 1810 did not confer a continuing power on successive selectmen. The power of selectmen is a naked one, and nothing is to be claimed on their own account. The duty required of them, in this instance, was one of discretion; and this furnishes a strong presumption that the persons then in office were alone intended by the vote.

DEWEY, J. The legislature having, upon the petition of the inhabitants of the town of Springfield, enacted the *St.* of 1809, *c.* 86, authorizing the raising of a fund for the support of public schools in that town, the town took immediate measures to carry into effect the object of the statute, and by a vote passed on the 8th of May 1810, authorized the trustees of the school fund to sell such land, belonging to the town, " as the selectmen shall, by writing under the hand of the major part of them, certify that it will be for the interest of said town to sell." There can be no doubt but that it was competent for the town to authorize the conveyance of the lands, in the manner indicated by this vote; and the only question is as to the extent of the authority conferred on the selectmen by the terms of the vote; whether it be an authority limited in point of time, extending only to the period of the tenure of office of the selectmen for the then current year, or was applicable to future boards of selectmen.

In looking at the act incorporating the trustees of the school funds, (*St.* 1809, *c.* 86,) we perceive at once that the purpose was, to create a permanent body of responsible men to manage a school fund, and that such fund was to consist, in part, of the proceeds of town lands appropriated to that object by the town. The trustees of the school funds were constituted a permanent board, with the power of filling their own vacancies, and not dependent upon annual elections. In searching for the true intent of the town, in the vote under consideration, and whether it was intended as a continuing power to

sell, the fact we have alluded to of the permanency of the office of the trustees who were constituted agents to sell, under the approval of the selectmen, is entitled to some weight. The general agents intrusted with the sale of the lands, being members of a permanent body, we may the more readily assume that provision would be made for a supervising body that might act for a more extended period than that for which municipal officers are elected. Looking at the vote itself, we find no limitation, in terms, to the then present year, or the then existing board of selectmen. The authority to act in this matter was clearly delegated to the selectmen, as such, and solely in reference to their official capacity. Those holding the office in future years would be alike chosen by the inhabitants of the town, and would equally represent the interests of the town, and would be presumed to be equally discreet and judicious. The board which was selected for this purpose strongly confirms the view, that there was no limitation to any particular year. The terms of the vote may well embrace future boards; and the general object and purposes of the vote being better effectuated by such construction, we are of opinion that the power to sell under the sanction of the selectmen, conferred by the vote of the town, was not limited to the period of the continuance in office of the then present selectmen, but was intended to be a continuing power, and to apply to the successive boards of selectmen that might be in office ; and that the vote of the town of May 1810, being in full force and unrevoked, the trustees of the school funds were authorized, in the year 1844, to sell such part of the lands belonging to the town as the selectmen for that year should certify would be for the interest of the town to sell.

*New trial ordered.*